# Appendix I

THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICHARD O'HEARN, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>LES SCHWAB WAREHOUSE CENTER, INC. and LES SCHWAB TIRE CENTERS OF WASHINGTON, INC.,<br><br>       Defendants. | No. 2:13-cv-02005-TSZ<br><br>PLAINTIFF'S PROPOSED TRIAL PLAN FOR TRIAL OF CLASS CLAIMS |

PLAINTIFF'S PROPOSED TRIAL PLAN FOR
TRIAL OF CLASS CLAIMS
Case No. 2:13-cv-02005-TSZ
010402-11  695344 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. PRESENTATION OF COMMON PROOF THAT LES SCHWAB VIOLATED THE WASHINGTON MINIMUM WAGE ACT.................................................................2

    A. It is undisputed that Les Schwab assistant managers worked over 40 hours each week and were not paid overtime because Les Schwab categorized them as "exempt" from the state's wage-and-hour laws.......................................................2

    B. Plaintiff will prove with common evidence that assistant managers worked at least 60.8 hours per week................................................................................3

    C. Les Schwab has the burden to prove that Les Schwab's assistant managers were exempt from Washington overtime requirements.....................................4

    D. Plaintiff will also prove with common evidence that Les Schwab's failure to pay its assistant managers overtime was willful and intentional....................................5

III. PHASE II WILL DETERMINE AGGREGATE AND INDIVIDUAL DAMAGES .........6

IV. CONCLUSION....................................................................................................................7

PLAINTIFF'S PROPOSED TRIAL PLAN FOR
TRIAL OF CLASS CLAIMS - i
Case No. 2:13-cv-02005-TSZ
010402-11 695344 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

## I. INTRODUCTION

Plaintiff respectfully submits this preliminary, proposed Trial Plan to support his Motion for Class Certification ("Motion").[1] The Plan is intended to help the Court assess how this matter could be tried efficiently following the certification of a class.

Plaintiff proposes to try this matter on a class-wide basis in two phases. The first phase will resolve liability. The Class will present its case-in-chief, submitting common proof of Les Schwab's violation of Washington's Minimum Wage Act ("Act")[2] by refusing to pay its assistant managers in Washington earned overtime pay. Plaintiff's case will include common evidence that the assistant managers worked overtime for which they were not paid and the number of hours over 40 they worked on average. The burden then shifts to Les Schwab, which will present its defenses including any evidence (i) that the assistant managers were exempt from the Act and (ii) regarding the number of hours the assistant managers worked. The Class will then present its rebuttal case, including evidence that Les Schwab misclassified the assistant managers based on the work they performed and that misclassification was willful and intentional. The jury will be asked to return a verdict as to liability, the number of hours assistant managers worked on average, and whether Les Schwab's conduct was willful and intentional. Plaintiff anticipates that he will need one week to present his case.

Phase II will determine aggregate damages owed to the Class and damages owed to individual class members, including statutory damages. Plaintiff anticipates Phase II will take one day total. After judgment is entered, an independent claims administrator can handle distributing the funds by sending checks directly to class members using Les Schwab records.[3]

---

[1] While Rule 23 does not require submission of a trial plan, this trial plan may aid the Court in considering the effect of class certification on the trial of Plaintiff's claims. Indeed, "[a]n increasing number of courts require a party requesting certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible to class-wide proof." Fed. R. Civ. P. 23 Advisory Committee Note (2003 amendments).

This Plan is necessarily preliminary. Plaintiff may amend, and reserves the right to amend, this Plan before trial based on any class-certification ruling, any other Court orders, facts developed in discovery, as well as any changes in the law. In preparing the Trial Plan, Plaintiff's counsel consulted with the attorneys who, in 2012, tried the same claims on behalf of a certified class of Oregon assistant managers to a verdict in the class's favor. This Trial Plan is based in part on the Oregon trial. Declaration of Jeniphr A.E. Breckenridge in Support of Plaintiff's Motion for Class Certification ("Breckenridge Decl."), ¶ 36.

[2] RCW 49.46.005, *et seq.*

[3] It is very common for courts to have follow-on proceedings regarding damages allocation, even if they involve individualized damage proceedings. *See*, *e.g.*, *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004);

PLAINTIFF'S PROPOSED TRIAL PLAN FOR
TRIAL OF CLASS CLAIMS - 1
Case No. 2:13-cv-02005-TSZ
010402-11  695344 V1

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Below is a more detailed outline of Plaintiff's proposal.

## II. PRESENTATION OF COMMON PROOF THAT LES SCHWAB VIOLATED THE WASHINGTON MINIMUM WAGE ACT

This is a simple wage-and-hour case involving approximately 170 class members – all assistant managers (current or former) employed at one of Les Schwab's 150 tire stores in Washington State.[4] The case will be proved by Les Schwab internal documents and testimony from company witnesses, representative class members, and experts.

To make a *prima facie* case against Les Schwab under the Act, Plaintiff must prove that the assistant managers were employed by Les Schwab, worked overtime, and were not paid for that overtime. The burden of proof then shifts to Les Schwab to prove any defenses to the case, including the defense that the assistant managers were exempt from the Act's overtime requirements.

### A. It is undisputed that Les Schwab assistant managers worked over 40 hours each week and were not paid overtime because Les Schwab categorized them as "exempt" from Washington's wage-and-hour laws.

Plaintiff expects that certain elements of the assistant managers' claims will be undisputed: Les Schwab employed the Class as assistant managers; assistant managers worked over 40 hours each week; and Les Schwab did not pay overtime to its assistant managers during the Class Period. Although not an element of the assistant managers' claims, Plaintiff believes that it will also be undisputed that Les Schwab categorically classified its assistant managers as exempt employees until January 1, 2013, when it reclassified them as non-exempt, nominally "to avoid litigation."[5] While Plaintiff expects to establish these facts by stipulation with Les Schwab before trial, if Les Schwab disputes all or any of these points, Plaintiff will prove them with the common evidence, described in the Motion, including documents from Les Schwab's own files, Company witnesses, and representative testimony by class members.

---

*Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003); 3 Conte & Newberg, NEWBERG ON CLASS ACTIONS, § 9:53 at 429-30 (4th ed. 2002) (collecting cases); 7B Charles A. Wright, Arthur R. Miller & Mary K. Kane, FEDERAL PRACTICE AND PROCEDURE § 1781 (2d ed. 1986).

[4] These numbers are based on information provided by Les Schwab in discovery (number of class members) and information publicly available at www.leschwab.com (number of stores).

[5] Breckenridge Decl., Ex. F.

PLAINTIFF'S PROPOSED TRIAL PLAN FOR
TRIAL OF CLASS CLAIMS - 2
Case No. 2:13-cv-02005-TSZ
010402-11  695344 V1

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**B.     Plaintiff will prove with common evidence that assistant managers worked at least 60.8 hours per week.**

As part of his case-in-chief, Plaintiff will present common evidence that Les Schwab assistant managers worked at least 60.8 hours per week on average. This evidence will come from the Company's own files and executive testimony.

To sustain a claim against an employer for overtime pay the employee must demonstrate that he or she performed work for which the employer did not pay.[6] Under the Act, the employer has a duty to keep accurate records for each of its employees, including the rate of pay, the amount paid each period to each employee, and the hours worked by each employee each day and each work week.[7] Once an employee produces sufficient evidence that he or she performed unpaid work, the burden shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to rebut the reasonableness of the inference to be drawn from the employees' evidence.[8] It is long-settled that the employee should not be penalized for the employer's failure to meet its statutory record-keeping duty.[9] If the employers' records are inadequate or inaccurate, the employees are entitled to establish their wage claims with "reasonably convincing evidence" or as "a matter of just and reasonable inference."[10]

It is undisputed that Les Schwab did not maintain statutory records for its assistant managers in Washington before January 1, 2013. But Company documents contain convincing evidence of the number of hours assistant managers company-wide worked. At the end of 2012, Les Schwab reclassified its assistant managers as non-exempt and, on January 1, 2013, began to the pay them hourly. One of the Company's stated objectives in making the change was to ensure that assistant managers' jobs, hours, and pay did not change when they were reclassified. To do this and transition from salary to hourly pay, Les Schwab had to calculate each assistant manager's equivalent hourly rate based on salary and the number of hours worked annually.

---

[6] RCW 49.46.130(1).

[7] RCW 49.46.070.

[8] *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

[9] *Id.* ("where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes … [t]he solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work").

[10] *Id. See also MacSuga v. Spokane Cnty.*, 97 Wn. App. 435, 445-46, 983 P.2d 1167 (1999).

PLAINTIFF'S PROPOSED TRIAL PLAN FOR
TRIAL OF CLASS CLAIMS - 3
Case No. 2:13-cv-02005-TSZ
010402-11  695344 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Based on the standardization of the assistant-manager position, the Company calculated that assistant managers worked on average 60.8 hours per week.[11]

If, as Plaintiff believes, Les Schwab did not maintain time records, the 2012 average is reasonable alternate evidence of the minimum number of hours worked and Plaintiff should be allowed to present it to the jury to prove his claims as a matter of just and reasonable inference.

Plaintiff may also present a second source of the number of hours that assistant managers worked per week. Plaintiff expects to call a number of current and former assistant managers to testify about the number of hours they worked weekly. "Evidence of the time worked by similarly situated employees can be used to deal with an absence of records."[12] Courts accept representative testimony to support class claims in wage-and-hour cases.[13] The adequacy of the testimony – including content, the number of witnesses relative to the size of the class, and credibility – may be challenged by Les Schwab and evaluated by the trier of fact.

**C.   Les Schwab will try to prove that the assistant managers were exempt from Washington overtime requirements.**

Once Plaintiff has made a *prima facie* case, the burden shifts to Les Schwab to prove that Washington law exempted its assistant managers from any overtime requirement.[14] Plaintiff anticipates that Les Schwab will raise one or both of two defenses: that the assistant managers are exempt from the Act's overtime requirements because they qualified for the "bona fide executive" exemption or the "bona fide administrative capacity" exemption. To prevail on their

---

[11] The Company used the standard schedule and leave package that assistant managers company-wide shared to determine the number of hours: five-day/six-day alternating week schedule, three weeks' vacation, six days PTO, six holidays, and one week at the annual assistant-manager meeting. *See* Breckenridge Decl., Ex. F.

[12] *Archie v. Grand Cent. P'ship, Inc.*, 86 F. Supp. 2d 262, 272 (S.D.N.Y. 2000).

[13] *See McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988) ("allow[ing] district courts to award back wages under the FLSA to non-testifying employees based upon the fairly representative testimony of other employees"); *Reich v. S. N.E. Telecomm. Corp.*, 121 F.3d 58, 66-68 (2d Cir. 1997) (affirming overtime award on behalf of 1500 workers based upon the testimony of 2.5% of class); *Ensor v. Chipotle Mexican Grill, Inc.*, 2014 U.S. Dist. LEXIS 79706, at *11-13 (S.D.N.Y. June 6, 2014) (discussing appropriate use of representational evidence in FLSA collective action); *McKeen-Chaplin v. Provident Sav. Bank FSB*, 2013 U.S. Dist. LEXIS 113654, at *8 (E.D. Cal. Aug. 12, 2013) (allowing proof of underwriter employee overtime with common proof and representative testimony).

[14] *Jones v. Rabanco*, 439 F. Supp. 2d 1149, 1167 (W.D. Wash. 2006); *Miller v. Farmer Bros. Co.*, 136 Wn. App. 650, 656, 150 P.3d 598, 601 (2007); *Clawson v. Grays Harbor Coll. Dist. No. 2*, 148 Wn.2d 528, 540, 61 P.3d 1130, 1136 (2003); *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 301, 996 P.2d 582, 587 (2000) ("the employer bears the burden of proving this 'exempt' status").

PLAINTIFF'S PROPOSED TRIAL PLAN FOR
TRIAL OF CLASS CLAIMS - 4
Case No. 2:13-cv-02005-TSZ
010402-11  695344 V1

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  executive-exemption defense or their administrative-capacity defense, Les Schwab must prove
2  that each of the requisite elements of the exemptions apply to the class.[15]

3  Plaintiff expects to rebut any evidence Les Schwab presents to purport to show that the
4  assistant managers were exempt from overtime requirements with documents, executive
5  testimony, and representative testimony by assistant managers, some of which is described in
6  Plaintiff's class-certification motion . Representative testimony is commonly used to prove
7  wage-and-hour violations on a class-wide basis.[16]

**D.  Plaintiff will then prove with common evidence that Les Schwab's failure to pay its assistant managers overtime was willful and intentional.**

As part of its rebuttal evidence, Plaintiff will prove that Les Schwab's failure to pay overtime to its assistant managers was intentional and willful. Any employer who, "willfully and with intent to deprive the employee of any part of his or her wages," pays an employee less than the employer is obligated to pay by statute, is guilty of a misdemeanor.[17] Further, employers who violate that provision will be liable in a civil action by the aggrieved employee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages.[18] The Act defines "willful" as "a knowing and intentional action that is neither accidental nor the result of a bona fide dispute, as evaluated under the standards applicable to wage payment violations under RCW 49.52.050(2)."[19]

Plaintiff claims that Les Schwab deprived the assistant manager's overtime pay knowingly and intentionally. Common evidence supporting this claim includes the Company's (i) historical and categorical classification of the assistant managers as "exempt;" (ii) admission that it classified the assistant managers as "exempt" without any assessment, evaluation, or consideration of their primary job duties and whether they fell within the Washington statute; (iii) knowledge of the misclassification at least as early as the first class-action lawsuit

---

[15] *Id.*; *See also Fiore v. PPG Indus., Inc.*, 169 Wn. App. 325, 334, 279 P.3d 972 (2012); *Mitchell v. PEMCO Mut. Ins. Co.*, 134 Wn. App. 723, 730, 142 P.3d 623 (2006) (quoting *Tift v. Prof'l v. Nursing Servs., Inc.*, 76 Wn. App. 577, 582, 886 P.2d 1158 (1995)).

[16] *See supra* at 4 n.13.

[17] RCW 49.52.050(a)(2).

[18] RCW 49.52.070.

[19] RCW 49.48.082(13).

PLAINTIFF'S PROPOSED TRIAL PLAN FOR
TRIAL OF CLASS CLAIMS - 5
Case No. 2:13-cv-02005-TSZ
010402-11  695344 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

challenging the practice in 2005; (iv) the Company's continued failure to classify its assistant managers company-wide as non-exempt and pay them past overtime even after one jury verdict and three class-wide settlements of the question; and (v) the eventual reclassification of assistant managers as non-exempt to "avoid litigation." Although Les Schwab did not maintain time records for each assistant manager, Plaintiff anticipates that discovery will show that Les Schwab maintained other employment and payroll records for them, and that Plaintiff's expert thus will use the Company's individual employment records to calculate each individual's damages based on the number of days worked during the class period.[20]

### III. PHASE II WILL DETERMINE AGGREGATE AND INDIVIDUAL DAMAGES

If the jury returns a verdict in favor of the class, Phase II will determine damages.[21] Plaintiff believes that Phase II should take one day. Plaintiff expects to present aggregate and individual damages through a forensic accountant whose calculations will be based on Les Schwab's own records, including employment and payroll records, and other common evidence.[22] If Les Schwab has not maintained this information, Plaintiff will reasonably rely on the jury's finding regarding the number of hours assistant managers worked on average as the best available evidence.

The majority of the work will be completed by experts before Phase II[23] and presented through their testimony. The class is relatively small (approximately 170 members) and calculating individual damages will not be unduly complicated or burdensome. The calculations may be subject to certain assumptions, about which the parties and their experts will confer

---

[20] If the Company does not have records to support the expert's individual calculations in this way, the expert can use the jury's findings as to the average number of hours the assistant managers worked as a basis for damages. *E.g.*, *Archie*, 86 F. Supp. 2d at 727 (ordering use of average of amounts awarded to 182 plaintiffs with employment records to calculate the damages of 12 plaintiffs without records); *Reich*, 121 F.3d at 66-68 (basing damages on sampling of 2.5 % of class).

[21] It is common for courts to have later proceedings to determine damages, including individualized damages. *See*, *e.g.*, *Carnegie*, 376 F.3d at 661; *Bell Atl. Corp.*, 339 F.3d at 306; 3 Conte & Newberg, NEWBERG ON CLASS ACTIONS, § 4.80 (5th ed.; database updated June 2014) (collecting cases); 7B Charles A. Wright, Arthur R. Miller & Mary K. Kane, FEDERAL PRACTICE AND PROCEDURE § 1784 (3d ed.; database updated Apr. 2014).

[22] Information relevant for the calculation includes class members' employment and payroll records for the class period, including rates of pay, weeks worked, vacation days, holidays, paid time off, attendance at the annual assistant-manager meeting. These are some of the same categories used by Les Schwab in 2012 to calculate the number of hours assistant managers work.

[23] Plaintiff proposes a ten-day break between Phases I and II to allow experts to calculate individual and aggregate damages based on the jury's findings.

PLAINTIFF'S PROPOSED TRIAL PLAN FOR
TRIAL OF CLASS CLAIMS - 6
Case No. 2:13-cv-02005-TSZ
010402-11  695344 V1

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

between Phase I and Phase II. Any disagreements regarding the assumptions will be submitted to the Phase II trier of fact.

Once the formula and assumptions are set, the calculations themselves will be mathematical. The same formula will be applied the same to each class member based on his or her employment and payroll records. If necessary, the experts will explain their respective assumptions, methodologies, and calculations to the Phase II trier of fact, with the actual calculations likely to be presented on a spreadsheet. There will be no need to separately present (aside from a spreadsheet) each class member's damages because the calculation will be arithmetical based on objective data in Les Schwab files. The expert's calculations will include pre-judgment interest and, if the jury finds that Plaintiff proved that Les Schwab's violation of the statute was wilful and intentional, statutory damages.[24]

The distribution of the judgment can be handled by an independent claims administrator. Checks to each individual class member will be sent directly to class members using Les Schwab records of class members' last known addresses.

## IV. CONCLUSION

Plaintiff's trial plan demonstrates that Plaintiff's claims can be tried efficiently on a class-wide basis. There are no bars to manageability.

DATED: June 26, 2014

Respectfully submitted,

By */s/ Steve W. Berman*
By */s/ Jeniphr A.E. Breckenridge*
Steve W. Berman, WSBA # 12536
Jeniphr A.E. Breckenridge, WSBA # 21410
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Attorneys for Plaintiff*

---

[24] Plaintiff proposes that the parties' experts should be able to agree on a methodology and necessary assumptions and then jointly calculate individual damages between Phase I and II and may even be able to reach agreement on the majority, if not all, of the individuals through an exchange of information and presented as a stipulation as to damages for the individuals, thereby eliminating the need for Phase II.

PLAINTIFF'S PROPOSED TRIAL PLAN FOR
TRIAL OF CLASS CLAIMS - 7
Case No. 2:13-cv-02005-TSZ
010402-11  695344 V1

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2014, I electronically filed the foregoing with the United States District Court for the Western District of Washington by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

DATED:  June 26, 2014

                                                Respectfully submitted,

                                                */s/ Steve W. Berman*
                                                Steve W. Berman

PLAINTIFF'S PROPOSED TRIAL PLAN FOR
TRIAL OF CLASS CLAIMS - 8
Case No. 2:13-cv-02005-TSZ
010402-11  695344 V1

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594